WHITEHEAD and wife vs. ARKANSAS CENTRAL RAILROAD CO.

RAILROADS: *Proceedings to condemn right of way, etc., when not valid.*
   The twenty-third section of "An act to provide for a general system of railroad incorporation," approved July, 23, 1868, is in conflict with article V, section 48 of the constitution, and all proceedings had in conformity to, or in the manner prescribed by said section for the condemnation of lands for public or railroad uses, are invalid.

APPEAL from *Phillips* Circuit Court.
Hon. M. L. STEPHENSON, Circuit Judge.
*A. H. Garland*, for appellants.

FARRELLY, Sp. J.   The appellants brought suit in the Phil-

lips circuit court against the appellees, to recover damages for alleged trespasses and injuries committed upon the lands of the appellants, by the appellees, in wrongfully entering into and upon and appropriating the same for a right of way.

The appellees answered, admitting that they entered upon the lands of the appellants, and occupied the same, but denied that their said entry was unlawful; averring that they were a duly incorporated railroad company, under the laws of the state, and, by virtue of said laws, they had a right of way over the lands in question; that the requirements of the law for the condemnation of said lands had been complied with, and by an order of court, at a previous term, upon proceedings had for that purpose, in accordance with law, the right of way over said lands had been vested in them, and that no damages had by such entry and appropriation accrued to the appellants. They file with and make a part of their answer a certified transcript of the record and judgment of the court condemning said lands and vesting in them the right of way.

The appellants demurred to the answer on the ground that "the facts stated in the answer are not sufficient to constitute a defense at law; because article V, section 48 of the constitution of the state says: compensation shall be ascertained by a jury of twelve men, in a court of record, as shall be prescribed by law, and the answer shows no such compliance with the law."

The twenty-third section of "An act to provide for a general system of railroad incorporation," approved July 23, 1868, and under which the proceedings to condemn the property in this case were had, is, in substance, so far as is material for the consideration of the question presented, as follows: That where the lands are not acquired by the gift of the owner, or by agreement of the parties, the corporation may present their petition to the circuit court in the district

where the lands lie, giving a description of the same, the names of the owners, praying the appointment of commissioners to ascertain the compensation to be made to the owner; requires notice to be given the parties interested; that the court shall appoint five commissioners, any three or more of whom shall ascertain and certify the compensation to be made for the lands, also all damages that may accrue to the owners thereof by reason of the taking, making such allowances or deductions for real benefit or advantages which such owners may derive from the construction of the road.

Article V, section 48, of the constitution, or that part of the section upon which the demurrer is based, reads : " No right of way shall be appropriated to the use of any corporation until full compensation therefor shall be first made in money, or first secured by a deposit of money to the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury of twelve men, in a court of record, as shall be prescribed by law."

We need not here discuss the right of eminent domain, or the right of private property.    The former is an essential element of sovereignty, admitted to exist in all well organized governments, arising out of the very exigency of their organism ; the latter, a right having its origin in natural justice, lying back of and existing prior to any constitution.    The provision of the constitution above quoted is merely declaratory of these rights, except so far as it contains an inhibition and makes mandatory the mode in which the right of eminent domain shall be exercised.

The inquiry presented by the demurrer is, whether the proceeding to condemn and appropriate the property of the appellants, in this instance, is compatible with a true and proper construction of the provision of the constitution above quoted.

Words more fixed and well understood, language plainer, more unambiguous and mandatory in terms than used in the constitution, it seems to us, could not have been employed, and admit of a doubtful construction. It requires full compensation to be made to the owner of the lands, in money, before any corporation can enter or appropriate the same, and such compensation must be irrespective of any improvement proposed by such corporation, and that such compensation shall be ascertained by a jury of twelve men. How were these mandatory prerequisites of the constitution complied with in the proceedings to condemn the property in the case presented? In lieu of a jury of twelve men, the ascertainment and assessment of damages were made or attempted to be made by five commissioners appointed by the court for that purpose, in pursuance of the act above referred to; and as to the compensation in money, to be made the owner of the lands condemned, before the right of entry could accrue to the appellees, the commissioners, in their report to the court (and which report is made part of the answer of the appellees) say: "Taking into consideration the real benefit which such owners or parties interested would derive from the construction of said road, they ascertained and do hereby certify that no damages would accrue to said lands, or the owners thereof, in granting the right of way." While the legislature may unquestionably prescribe the mode of procedure in the condemnation of a right of way, it is clearly not within their power to do so in such a way or manner as to impair or destroy the right. In the section of the act under consideration, in declaring that the enhanced value of the lands, by reason of the construction of the road, may be deducted from the real ascertained value of those to be appropriated, they attempt to do that indirectly which the constitution says shall not be done — the taking of the owner's lands without full compensation being first made

therefor in money.    The payment or deposit of the assessed value of the lands, irrespective of any enhanced value, by reason of the appropriation, is a precedent condition to the right of entry, and without which the assessment and judgment of the court will not protect the corporation.    There were no damages assessed in this case, for the reason, as clearly appears from the answer of the appellees, that the supposed increased value of the lands not appropriated was deducted from the real value of those condemned.    Could this be done, even though a jury of twelve men, as required by the constitution, had ascertained the damages?    The court, in the case of *Brown v. Beatty*, 34 Miss., 241, where this question was presented, says: "The party, at the time of the assessment, was entitled to just compensation.    *    *    No diversity can exist as to the true construction of the language of the bill of rights.    He was entitled to the cash value of the land when the assessment was made.    *    *    He was entitled to be paid in money.    It was as clearly incompetent for the legislature to prescribe in what he should be paid, as to prescribe how much or how little he should receive.    Manifestly, a party whose property has been taken and appropriated to public use, in the construction of a railroad, cannot be compelled to receive, as compensation, the estimated enhancement in the value of his remaining property.    The cash value and the actual damage are the true standards by which to determine the compensation to which, in such cases, the party is entitled. We think, therefore, that the provision in the eighth section, by which the jury are directed in assessing the damages, when land is the subject, to take into the estimate as an offset to the claim of compensation, the benefit to the owner resulting from the location of the road upon his land, is invalid."

Aside from the objection that the ascertainment of the damages was not had by a jury of twelve men, as a special

cause relied upon by the demurrer, the gist of the provision of the constitution, and of all proceedings had to condemn private property for public use is, that compensation shall be first made to the owner before the right of entry can accrue. *Martin et al. ex parte*, 13 Ark., 198; *Memphis and Charleston Railway Co. v. Payne*, 37 Miss., 700; *McAuley v. Western Vermont Railway Co.*, 33 Vt., 311; *Henry v. Dubuque and Pacific Railway Co.*, 10 Iowa, 540; *Burns v. Dodge*, 9 Wis., 458; *Evans v. Hœfner*, 29 Mo., 141. We have seen that no such compensation was made in this case. It will not do to say that the appellants had notice of the proceedings and should have appeared and defended their interest before the commissioners, or in the court rendering the judgment of condemnation. In proceedings of this character, in contemplation of the constitution, every step is taken at the instance and at the peril of the corporation. There is nothing in the section of the act under which these proceedings were had that makes it obligatory upon the landowner to appear and contest. On the contrary, the judgment of the court, in condemning the property, is made conclusive, without an appeal being prescribed. In such case the owner may remain silent until compensation is made, and until such compensation, no right of way is obtained. *St. Joseph and Denver City R. R. Co. v. Orr*, 8 Kan., 419; *Gulf R. R. Co. v. Owen*, id., 418–19.

We do not wish to be understood, however, as saying that where there is no constitutional objection to the mode of procedure and the right of appeal is given, that the legislature has not the power to require the landowner to appear and contest or be barred from other remedy or action.

From the foregoing we conclude that the proceedings in this case, to condemn the right of way under the 23d section of the act aforesaid, were in conflict with the 48th section of the

30

fifth article of the constitution, and that the demurrer was well taken to the answer and should have been sustained.

The judgment of the circuit court of Phillips county in overruling the demurrer is reversed and the cause remanded.

STEPHENSON, J., being disqualified, did not sit in this case.