## 8573

### SOUTH CAROLINA WESTERN RAILWAY v. ELLEN.

1. THE PROCEEDING PRESCRIBED BY STATUTE FOR CONDEMNATION OF RIGHTS OF WAY BY RAILROAD COMPANIES is a special statutory proceeding, not in the Circuit Court, but with right of appeal to that Court.

2. IBID.—CONSTITUTIONAL LAW.—If the statute had provided no right of appeal to the Circuit Court, it would not have satisfied the constitutional provision that the "compensation shall be ascertained by a jury of twelve men, in a court of record, as shall be prescribed by law," but the provision giving the Circuit Judge the right to judge of the sufficiency of the grounds of appeal, contravenes this constitutional provision.

3. IBID.—IBID.—ESTOPPEL.—The corporation is not estopped from insisting that this provision is unconstitutional by invoking the statutory provision, in the first instance. .

4. IBID.—IBID.—The provision as to appeal is for the benefit and use of both the landowner and the corporation.
   *Power Co.* v. *Williams,* 85 S. C. 179 *and R. R. Co.* v. *R. R. Co., 57 S. C.* 317, *distinguished from this case.*

Before RICE, J., Lee, ———, 1912. Affirmed.

Proceeding to condemn right of way by South Carolina Western Railway against John H. Ellen. Defendant appeals from Circuit judgment. This case was argued in the Supreme Court at the November term, 1912, but ordered re-argued before the Court en Banc on the — day of June, 1913.

*Messrs. Mendel L. Smith* and *J. B. McLaughlin,* for appellant, cite: *Does the statute fully meet the constitutional requirement?* 57 S. C. 317; 58 S. C. 563; 85 S. C. 172; Con. 1868, art. 12, sec. 3; Con. 1895, art. IX, sec. 20; 51 Am. & Eng. R. R. Cas. 669; 4 Rap. & Mack's Dig. Ry. Law, 605; 33 S. C. 483; 59 S. C. 371; Code 1912, 3295; 5 Rich. Eq. 597; 62 S. C. 52. *Does the right of appeal depend on the Judge's view of the reasonable sufficiency of the grounds?* 85 S. C. 172. *Party cannot invoke a statute*

*and assail its constitutionality:* 57 S. C. 122, 322; 85 S. C. 179.

*Messrs. Geo. E. Dargan* and *Thos. H. Tatum,* contra. *Mr. Tatum* cites: *The statute creates no court of record for condemnation:* 17 S. C. 82; 57 S. C. 317; 58 S. C. 560; 68 S. C. 560; 85 S .C. 172.

June 6, 1913. The opinion of the Court was delivered ·by

MR. JUSTICE HYDRICK. Sections 20 and 21 of Article IX of the Constitution are as follows:

Section 20. "No right of way shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner or secured by a deposit of money, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury of twelve men, in a court of record, as shall be prescribed by law.

Section 21. "The General Assembly shall enforce the provisions of this article by appropriate legislation."

The Civil Code (Section 3292, *et seq.*) authorizes the condemnation of rights of way for railroads, and prescribes, in detail, the manner in which it shall be done, and in which the compensation to the landowner therefor shall be ascertained.

It is sufficient for the purpose of the present inquiry to say that, when the parties do not agree, and it becomes necessary to resort to condemnation, the corporation shall petition the judge of the circuit, who shall order the petition filed in the clerk's office, and the clerk shall, thereupon, empanel a jury to ascertain the amount of compensation. Section 3296 provides, in substance, that either party may appeal from the verdict of the jury to the Circuit Court, and *"if the Court shall be satisfied of the reasonable suffi-*

*ciency of the grounds,"* an issue shall be ordered and the question of the amount of compensation shall be submitted to a jury in open court.

The railway company instituted this proceeding to condemn a right of way over defendant's land, and have the amount of compensation therefor ascertained. From the verdict of the jury empaneled by the clerk, the company appealed to the Circuit Court, and demanded that the amount of compensation should be ascertained by a jury in that Court. The Court was not satisfied of the sufficiency of the grounds of appeal, but held, nevertheless, that the company had the right, under the section of the Constitution above quoted, to have the compensation ascertained by a jury of twelve men in a court of record, and, holding that the jury empaneled by the clerk was not such a jury, ordered the issue set down for trial in the Circuit Court. The Court held, also, that the company, having pursued the only method by which it could obtain the right of way, and have the compensation to be paid therefor assessed, was not estopped from attacking, as unconstitutional and void, the provision of Section 3296, above quoted, which requires that the Court shall be satisfied of the sufficiency of the grounds of appeal, as a condition precedent to the right of trial by jury in open court. The appeal challenges these rulings.

The first question to be determined is, whether the condemnation proceedings is *in* the Circuit Court, or is merely a special statutory proceeding, with right of appeal *to* the Circuit Court; for, if the proceeding is *in* the Circuit Court, the requirement of the Constitution that the compensation shall be ascertained by a jury of twelve men in a Court of record has been satisfied; otherwise, if it is not.

Condemnation of rights of way was unknown to the common law. Its origin is statutory. It is, therefore, generally regarded by English and American courts as a

special statutory proceeding. Numerous expressions in the opinions of this Court, and the result of its decisions, show conclusively that we have heretofore regarded it as a special statutory proceeding, not in the Court, until brought there by appeal. Upon no other hypothesis can the decisions of this Court be harmonized.

In *R. Co.* v. *Ridlehuber,* 38 S. C. 308, 17 S. E. 24, the company denied the right of the landowner to compensation for a right of way over his land, and brought an action to enjoin proceedings instituted by him, under the statute, to have his compensation ascertained. The Circuit Court dismissed the action, holding that the rights of the parties could be settled *in the proceedings themselves.* This Court reversed the ruling, and held that the statute provides only the *manner* in which the right of way shall be taken and the *mode* by which the amount of compensation shall be ascertained, and that the issue as to the *right* to compensation must be determined in an action brought for that purpose. That ruling has been followed ever since.

In *Water Co.* v. *Nunamaker,* 73 S. C. 550, 53 S. E. 996, the action was for the same purpose. The Court said: "When the right to institute condemnation proceedings is contested, the proper remedy is to bring an action in the Court of Common Pleas in order that the Court may, in the exercise of its chancery powers, determine such right. *Railway* v. *Ridlehuber,* 38 S. C. 308, 17 S. E. 24; *Cureton* v. *Railway,* 59 S. C. 371; *Glover* v. *Remley,* 62 S. C. 52, 39 S. E. 180; *Railroad* v. *Burton,* 63 S. C. 348, 41 S. E. 451; *Riley* v. *Union Station Co.,* 67 S. C. 84; *Reynolds* v. *Railway,* 69 S. C. 481, 48 S. E. 476. These cases show that such action must be regarded as independent, and not ancillary to the condemnation proceedings." On petition for rehearing, in response to appellant's contention that the Court had overlooked the distinction between ancillary and independent suits, the Court said: "The appellant also quotes the language of Mr. Justice Bradley, in Wood, 112, in

which, after stating he was unable to find any precedent for a bill for *injunction* to stay proceedings in the same Court, says: 'I cannot see any necessity for it. If any circumstances exist which render it improper or inequitable to carry on proceedings in this Court, they can always be brought to the attention of the Court by motion or petition in the suit. I shall direct the bill as such to be dismissed, but allow it to stand as a petition in the several suits sought to be suspended. Supposing the matter to be properly brought before the Court, on petition and motion thereon, the question arises whether the proceedings in this Court ought to be stayed.' *Conceding that these principles would prevail if the action herein and the condemnation proceedings were in the same Court, they are not applicable, for the reason that this action was commenced in the Court of Common Pleas, while the condemnation proceedings were instituted in a special statutory tribunal from which an appeal may be taken to the Court of Common Pleas."* (Italics added.) This case is directly in point, and seems to be conclusive of the question.

If the statutory proceedings were *in* the Court, the Court would not entertain a separate action to enjoin them, for the Court has control of any action or proceeding pending therein. In such cases, the remedy is by motion *in the cause*. *Ins. Co.* v. *Mobley,* 90 S. C. 552.

That the parties are given the right to appeal to the Circuit Court shows clearly that the legislature did not regard the proceedings as one in the Court. It would be somewhat anomalous to allow an appeal to a Court from a proceeding in that Court.

The authorities are practically agreed that, when a constitution or statute speaks of a jury, without qualifying words, it means a common law jury of twelve men, presided over by a Court. But, as statutes in some States provide for "a jury of view," or "a jury of appraisers," etc., in condemnation proceedings, no doubt the framers of our

Constitution, desiring to make plain their intention that, in this State, the parties to such proceedings should have the right to the final decision of a common law jury, undertook to do so by qualifying the word "jury," by adding that it should consist of "twelve men," and sit "in a court of record," which, of course, carries with it the idea that it shall be presided over and instructed by a judge.

In *Archer* v. *Board of Levee Inspectors,* 128 Fed. 125, the Court held unconstitutional a statute of Arkansas which provided that, on the complaint of any person aggrieved by the running of a levee through his land, the sheriff of the county should summon a jury of six landowners who should assess the damages and whose decision should be final. The provision of the constitution of Arkansas on the subject was in substance the same as that of our constitution, and almost in the same words. It read as follows: "No property, nor right of way shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner in money, or first secured to him by a deposit of money, which compensation, irrespective of any benefit of any improvement proposed by such corporation, shall be ascertained by a jury of twelve men, in a Court of competent jurisdiction, as shall be prescribed by law."

The reasoning of the Court is so clear and strong that we quote from the opinion at length:

"But it is urged that this act provides for the assessment of damages by a jury. It is true, the act does call the persons who are to assess the damages a jury; but it provides for only six jurors, when the constitutional provision requires a jury of twelve. It is unnecessary to determine whether, if that were the only defect in the act, the Court could not disregard the provision limiting the jury to six, and have the issues tried by a jury of twelve. But is the sheriff's jury provided for by that act a jury, within the meaning of the constitutional provision? A trial by jury,

as defined by the Supreme Court of the United States in its latest opinion, is as follows:

"Trial by jury, 'in the primary and usual sense of the term at the common law and in the American Constitutions is not merely a trial by a jury of twelve men before an officer vested with authority to cause them to be summoned and empaneled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of twelve men in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and, except on acquittal of a criminal charge, to set aside their verdict if, in his opinion, it is against the law or the evidence. This proposition has been so generally admitted and so seldom contested that there has been little occasion for its distinct assertion.' *Capital Traction Co.* v. *Hof,* 174 U. S. 1, 13, 19 Sup. Ct. 580, 585, 43 L. Ed. 873.

"Merely calling it a jury does not make it so. The duties of the sheriff's jury, as defined by the act, are merely those of commissioners. There is no provision for a superintendence by a judge. No one is authorized to instruct them on the law, to advise them on the facts, or to set aside their verdict if it is against the law and evidence. How is the sheriff's jury to know what items are to be considered by them as elements of damage? No provision is made by the act for anyone to instruct them as to the law, nor is anyone authorized to set aside their verdict, even if it should appear conclusively that the verdict was the result of prejudice, passion, partiality or misconstruction of the law.

"It may be conceded that a proceeding before such a body is not violative of a constitutional provision requiring a trial by a jury, if an appeal can be taken from the decision of that body to a court of record, where a trial *de novo* may be had by a constitutional jury of twelve men, under the superintendence of a judge. But the act not only fails to provide for an appeal, but expressly declares that the find-

ings of the sheriff's jury 'shall be final in the premises.' This section of the act is, therefore, clearly in conflict with the constitution of the State."

Appellant relies upon the remarks of the late Chief Justice McIver, in *R. Co.* v. *R. Co.*, 57 S. C. 322, 35 S. E. 553, but concedes that they were obiter. Properly understood, however, the argument of the learned judge supports respondent's contention. In that case, the Circuit Court was satisfied of the sufficiency of the grounds of appeal. There was, therefore, no room for the contention that the defendant who appealed from the verdict of the clerk's jury, had the right to a trial by jury in open court, without regard to whether he had satisfied the Court of the sufficiency of his grounds of appeal or not. But the contention there was that the whole statute was unconstitutional and void, because the jury trial therein provided for was not a jury trial "in a court of record," as required by the constitution. In response to that contention, the learned Chief Justice proceeded to show that the statute prescribed certain preliminary steps, which, if complied with, will enable the parties to obtain a jury trial "in a court of record," which satisfies the constitution, as we shall presently show. The Chief Justice said: "It will thus be seen that the statute makes such provisions as will secure to either party every right guaranteed to him by the constitution, provided he complies with the provisions 'prescribed by law' for such purposes. * * * If a party, through his own neglect or omission, fails to obtain in a case like this, or, indeed, in any other case, a right of trial by jury in open court, or any other right guaranteed to him by the constitution, by neglecting to pursue the mode prescribed by law for that purpose, it is not the fault of the law, but the fault is his own." In that case, it was the defendant's own fault that it failed to get a jury trial in open court, because it did not serve its grounds of appeal.

That Chief Justice McIver did not have in mind, in his discussion of the question raised in that case, the same point

we are now considering is clearly shown by his remarks in the subsequent case of *R. Co.* v. *Johnson,* 58 S. C. 560, 36 S. E. 919, which was an appeal from an order submitting the issue of compensation to a jury in the Circuit Court. After showing why this Court would not review the ruling of the Circuit Court that it was satisfied of the sufficiency of the grounds of appeal, he said: "Indeed, we may say, though the point has not been raised in this case, and, therefore, is not properly before us for decision, that it is, at least, doubtful whether, under the provisions of section 20 of article IX of the present constitution, a person who has taken an appeal to the Circuit Court in the manner prescribed by the statute, in a case like this, can be denied the right to have the issue of the amount of compensation which should be allowed him tried 'by a jury of twelve men, in a court of record, as shall be prescribed by law.'"

If the legislature had provided no right of appeal, would the proceedings have satisfied the constitutional requirement? Can it be supposed that the framers of the constitution intended that a matter which was deemed so valuable and important as to be made the subject of a constitutional guarantee should be finally decided by a jury circumstanced as the clerk's jury ordinarily is? It is usually composed of men who are ignorant of law and the rules of evidence, and without experience in legal procedure. They have no power to punish for contempt of their proceedings, which may, therefore, be affected by irregularities which would utterly vitiate a trial by jury in any court. There is no way by which the jury can be protected from improper influences. There may, and often do, arise nice questions of law as to the elements of just compensation and special damages, and as to the relevancy and competency of evidence. Left to themselves in the decision of such questions, grave injustice might result. These are mentioned merely as considerations tending to show that the framers of the constitution did not intend that their verdict should be

final. On the other hand, perhaps, in a considerable major-
ity of the cases, the matter of ascertaining the compensation
is simple and a satisfactory conclusion may be reached
merely by viewing the land, and their verdict is satisfactory
to all concerned.

This leads to the consideration of the suggestion that, if
the clerk's jury is not a jury in a court of record, then its
work is a nullity. By no means. It is a convenient and
often satisfactory step in the proceedings which, if pursued
according to the statute, will ultimately result in a trial by
jury in open court, if either party desires it. Moreover, the
verdict is *prima facie* correct, and furnishes a basis upon
which the compensation may be secured by a deposit of
money, and thereby prevent needless delay in the progress
of the work. "An act is not unconstitutional which pro-
vides for an assessment of damages in condemnation pro-
ceedings in the first instance by commissioners, viewers, or
appraisers, where a right of appeal is secured to a court
where a jury trial may be had; and this rule applies even
where a jury trial in such proceedings is expressly guar-
anteed by the constitution, but the appeal must be allowed
to a court where the jury of twelve can be had." 24 Cyc.
195; 6 A. & E. Enc. L. (2d) 981; *Faust* v. *Bailey,* 5 Rich.
107; *Gregory* v. *Rhoden,* 24 S. C. 97.

The same authorities hold that, if the guaranteed right is
not allowed in the first instance, but only on appeal, neither
the right of appeal nor the right of jury trial on appeal must
be hampered or fettered by unreasonable restrictions. Rea-
sonable restrictions, such as the requirement that notice and
grounds of appeal shall be given within a specified time, are
permissible, because they are usual and necessary to due and
orderly procedure, and the parties can certainly comply with
them, and if they fail to obtain the right guaranteed to them,
as said by Chief Justice McIver in *R. Co.* v. *R. Co., supra,*
it will be their own fault and not the fault of the law. But
a provision which makes the enjoyment of the right depend

upon the judgment or discretion of the judge is unreasonable, because it may result in depriving the parties of the right *without fault on their part.* Therefore, it so burdens the right as to destroy the full force and effect of the guarantee. It follows that the condition imposed by the statute is violative of the constitution.

We next consider whether the company is estopped, because it instituted the proceeding under the statute, from taking the position that the condition in question is void. The company does not contend that the statute is wholly void. Its contention is merely that a single and separable part of it is void, which is not inconsistent with the main purpose and scheme of the act. There is, therefore, nothing in that position which, according to any principle of the law of estoppel or of justice, should work an estoppel. The general principle that one who voluntarily proceeds under a statute and claims benefits thereby conferred will not be heard to question its constitutionality to avoid its burdens, is conceded, and its soundness is not questioned. And, as corporations have no right to exercise the power of eminent domain, except as it may be granted them by the State, in the absence of constitutional restrictions, the legislature may impose upon the exercise of the right by them just such conditions as it may see fit. The corporation may accept the privilege with the conditions imposed, or not at all; but it will not be allowed to accept the privileges and reject the conditions. *Gano* v. *Minneapolis, etc., R. Co.,* 89 Am. St. R. 393. But that principle is not applicable in this case, because the framers of the constitution expressed the intention that the privilege of condemnation should be accompanied by the right to have the compensation ascertained by a jury in a court of record. The granting of the right to trial by jury in a court of record is imposed by the constitution as a condition or restriction upon the power of the legislature to grant the privilege of condemnation. In other words, the privilege cannot be

granted, unless the right is secured. The one must accompany the other.

The makers of the constitution knew that the privilege of exercising the power of eminent domain depended upon the legislative will and action. They knew, also, that that right had for many years been granted, and would, of necessity, be granted in future for the development of the State's resources. In the face of that knowledge, the language of section 20, above, carries both a prohibition and a command to the legislature, to wit: You shall not grant to any corporation the right to appropriate any right of way, until full compensation therefor shall be first made to the owner, or secured by a deposit of money; and that compensation shall be ascertained by a jury of twelve men in a court of record, as shall be prescribed by law.

The statute affords the only means whereby compensation for rights of way can be ascertain, if the parties cannot agree. This Court has held that where the right to condemn or the right to compensation is not disputed, the mode of ascertaining the compensation prescribed by the statute is exclusive. *Glover* v. *Remley,* 62 S. C. 52, 39 S. E. 780. This being so, it is clear that, if a party who proceeds under the statute is estopped to say that the condition in question is void, the right guaranteed to accompany the privilege, when granted, is denied without a remedy, contrary to the ancient boast of the law.

The suggestion that the provision for trial by jury was intended for the benefit of the landowner only is not supported by the language used in the constitution, nor by any sound reason that has been advanced. But, even in that view of the case, suppose the landowner were to institute proceedings under the statute to ascertain his compensation, and he is limited to that method in those cases where it is exclusive, would he, too, be estopped? If not, upon what principle could a different rule be applied? Would not the application of a different rule in case of his attack upon the

validity of the provision in question be a violation of that provision of the constitution which guarantees to all citizens the equal protection of the laws?

The question of estoppel is not concluded by the decision in *Power Company* v. *Williams*, 85 S. C. 179, 67 S. E. 136. In that case, the decision is rested upon two grounds: 1. That which is here invoked, to wit: That the company was estopped to attack the constitutionality of the provision in question, because it had instituted the proceeding under the statute. 2. Because the point had not been presented to or decided by the Circuit Court. This Court has held in numerous cases that questions not presented to or decided by the Circuit Court are not properly before this Court on appeal. It follows, therefore, that when this Court held that the record did not show that the Circuit Court had been requested to rule upon the question, any remarks by this Court upon the question itself were *obiter,* because the question was not properly before the Court. The same is true of the remarks in *R. Co.* v. *R. Co.,* 57 S. C. 317, 35 S. E. 317, cited in *Power Co*. v. *Williams.*

THE CHIEF JUSTICE, MESSRS. JUSTICES WOODS *and* WATTS *and* CIRCUIT JUDGES ERNEST GARY, GAGE, DEVORE, SHIPP, SEASE *and* SPAIN, *concur.* CIRCUIT JUDGES PRINCE *and* FRANK B. GARY, *concur in the result.*

MR. JUSTICE FRASER, *dissenting.* This is a proceeding by the appellant for condemnation of the land of the respondent. The company requiring the right of way over the land of the respondent, procured the necessary order under the statute for a jury to assess the compensation. The jury assessed the value and fixed the compensation at thirty-five hundred dollars ($3,500.00). From this assessment the railroad company appealed to the Circuit Court and demanded a trial in open court to reassess the compensation. The Circuit Judge held that he was not "satisfied of the

reasonable sufficiency of the grounds," but granted an order for an issue to be tried in open court on the ground that the company was entitled to have the issue tried in open court, under the Constitution. From this judgment the owner appealed on several exceptions and states his questions as follows:

1. "Does the statute regulating |the condemnation of rights of way (section 3292), provide such a method of assessment of damages for the appropriation of a right of way by a corporation, as will fully meet the requirements of section 20, article IX, of the Constitution, which provides that such 'compensation shall be ascertained by a jury of twelve men, in a court of record, as shall be prescribed by law?' In other words, in the language of Mr. Chief Justice McIver in *Railroad Co.* v. *Railroad Co.*, 57 S. C. 324, 35 S. E. 553, does the statute 'secure to either party every right guaranteed to him by the Constitution?'

2. "Is section 3296, in so far as it makes the right of appeal from the verdict of a condemnation jury dependent upon the determination of 'the reasonable sufficiency of the grounds' of appeal by the presiding judge as a preliminary matter, contrary to the provisions of section 20, article IX, of the Constitution?

3. "Is the respondent estopped from asserting the right, if it exists, to submit the question of compensation to a jury in the Court of Common Pleas, having invoked, at every stage of the proceedings, the condemnation statute?

4. "If such right exists, independently of the statute of condemnation, should it be asserted by a proceeding under the statute, or in the Court of Common Pleas *ab initio?*"

There are two provisions of the Constitution that must be considered.

Article I, section 17, provides: * * * "Private property shall not be taken for private use without the consent of the owner. Nor for public use without just compensation being first made therefor."

6—95

Article IX, section 20: "No right of way shall be appropriated to the use of any corporation until full compensation therefor shall be first made to the owner or secured by a deposit of money, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertain by a jury of twelve men in a court of record as shall be prescribed by law."

It will be seen that the first provision is in the "Declaration of Rights," where the most sacred and inalienable rights of the private citizen are secured to him. The second provision is made under the head "Corporations" and is in restraint of corporate power.

If the verdict of the jury "not in open court" does not ascertain the compensation, then the deposit of the amount of their verdict can confer upon the railroad no right to proceed with the taking of the property of the "owner" until the compensation is first paid or deposited. These provisions are mandatory. If this method of ascertaining the compensation provided by statute does not comply with the constitutional provision, then it is unconstitutional and all the court can do is to so declare and dismiss the proceedings. This question this Court need not decide in this case, because the appellant by taking these proceedings has waived its constitutional right to object. It has been held in this State that the constitutional right of the "owner" to prevent the appropriation of the right of way "until full compensation therefor shall be first made to him or secured by a deposit of money," may be waived by the owner.

See *Verdier* v. *Railroad Co.,* 15 S. C. 483.

The attack is necessarily on the assessment "not in open court." Before the appellant can claim, as a matter of right, a reassessment, it must be held that the compensation has not been ascertained, paid or deposited. If the compensation has not been ascertained in a court of record, by a jury of twelve men, it is because the verdict is a nullity. There is

nothing in the case from which consent to entry before compensation can be presumed.

*Railroad Co.* v. *Railroad Co., 57* S. C. 322, 35 S. E. 553: "The respondent, by participating in the proceedings prescribed by the statute, without protest or objection up to the time of the hearing before this Court, which is only invested with jurisdiction to review the action of the Circuit Court and by actually basing its application for the order appealed from upon the provisions of the statute, which it now claims is unconstitutional, is estopped from raising the question of the constitutionality of the statute, the benefit of which it has availed itself of. If the position now taken by respondent be tenable, then, it seems to us, its proper course would have been to entirely ignore the statute, which, if unconstitutional, was a nullity, and bring its action against the appellant for a trespass in intruding upon its property without lawful authority. But it certainly cannot be permitted to avail itself of the benefit of the statute and at the same time claim that it is unconstitutional, null and void."

See also *Power Co.* v. *Williams,* 85 S. C. 179, 67 S. E. 136. Here the respondent took the proceedings under a statute that it now claims is unconstitutional. While it is not absolutely necessary to decide the constitutionality of this statute, yet it is very desirable to do so, and the question fairly arises from the record. In my judgment the statute is constitutional and for the very excellent reasons stated by Mr. Chief Justice McIver in *The Railroad Company* v. *The Railroad Company, supra,* at pages 322-324:

"But is the statute unconstitutional? In the first place, it will be observed that the provisions of the present Constitution is identical with that contained in the Constitution of 1868, section 3, article XII, and it is very strange that in none of the numerous cases of this kind which arose while the Constitution of 1868 was in force, was this question presented to this Court for decision. True, this is not conclusive; but in view of the intelligent, learned, vigilant and

able bar of which this State can boast, the fact that this question has never before been raised, is entitled to some weight. Let us, therefore, examine for a moment whether the statute under which these proceedings were taken is in violation of the Constitution. The point made seems to be that the Constitution requires that the amount of the compensation "shall be ascertained by a jury of twelve men in a court of record as shall be prescribed by law," whereas, the contention is that the statute contemplated a proceeding by which the amount of compensation may be ascertained by a jury of twelve men, not in a court of record. Now, what are the provisions of the statute? By section 1744 of the Rev. Stat., the first step required to be taken is an application, 'by petition to the judge of the circuit wherein such lands are situated, for the empanelling of a jury to ascertain the amount which shall be paid as just compensation for the right of way required.' The next step is that the said judge shall order the said petition to be filed in the office of the clerk of the Court of Common Pleas, and shall order the said clerk to empanel a jury of twelve to ascertain the compensation. The next step is that said clerk shall empanel a jury of twelve persons in the manner prescribed by the statute. Then, in section 1746, it is provided that the jury so empanelled, after being sworn faithfully and impartially to determine the question of compensation submitted to them, shall proceed to inspect the premises, and to take testimony and ascertain the amount to which the owner is entitled for the use of his land, and render their verdict in writing for the same. Then follows section 1747, copied above, securing a right of appeal from such verdict to the Circuit Court, and prescribing the manner in which such appeal shall be taken, by which the question of the amount of compensation may be submitted 'to a jury in open court.' Then by section 1753, it is provided that all proceedings in relation to the condemnation of lands for the right of way 'shall be filed in the office of the clerk of the Court of

Common Pleas for the county in which such proceedings were had, and shall be there of record.'   It will thus be seen that the statute makes such provisions as will secure to either party every right guaranteed to him by the Constitution, provided he complies with the provisions 'prescribed by law' for such purposes.   We can scarcely believe that the point made that the word 'shall' in the constitutional provision, 'as shall be prescribed by law,' implies that there must be legislation after the adoption of the present Constitution prescribing the mode of proceeding to be adopted in order to secure a trial 'by a jury of twelve men in a court of record,' can be seriously insisted upon, especially in view of the provision in the first subdivision of section 11 of article XVII, of the present Constitution, 'that all laws in force in this State at the time of the adoption of this Constitution, not inconsistent therewith, and constitutional when enacted, shall remain in full force until altered or repealed by the General Assembly or expire by their own limitation.'   Even, therefore, if the constitutional question were properly before us, we would be obliged to say that there was at least grave doubt whether the statute was in violation of the Constitution, and the rule in such cases is well settled that the constitutionality of the statute should be sustained."

But it is stated that this may give the owner a right that is denied to the condemning corporation and violates the equal rights guaranteed to litigants.   Is it unconstitutional to allow the defendant more challenges in the Court of General Sessions than is allowed to the State or to provide that a verdict of not guilty is final if in favor of the defendant and not final if in favor of the State?   To say that in criminal cases it is different is no answer.   In criminal cases there is a difference because the State is a party and the State may and does waive its right to equality.

Here it is said the respondent is a private corporation and as such is entitled to equal rights.   The corporation has a dual capacity.   It is to some extent public and to some

extent private. In condemnation proceedings it must stand on its public and not its private rights. As a private corporation it can take not a foot of land without the "consent" of the owner. Condemnation proceedings are based on the want of consent.

The property is taken under the State's right of eminent domain and is in theory, at least, a taking by the State. When, therefore, the corporation undertakes to take the property of the owner in the right of the State, it must accept the right with all the limitations the State has seen fit to impose upon itself. There would be no equality if the condemning corporation were allowed all the rights that is granted to it by the State, as the right of the State, and all the rights of a private citizen. In condemnation proceedings the respondent stands solely upon the rights of the State to condemn private property for public use after compensation has first been paid or deposited.

The above answers all the questions properly before this Court.

For these reasons I dissent.